of America, argument not to exceed 15 minutes per side. Mr. Rowan, you may proceed for the record. Good morning. Good morning, Your Honors, and may it please the Court, Matthew Rowan on behalf of Petitioner Appellant Paul Monea. If I could, I'd like to reserve five minutes for that. All right. Paul Monea received ineffective assistance of counsel before trial, during trial, and after trial. As a result of the deficient performance his counsel provided, Mr. Monea not only was precluded from raising a potential defense to the charges against him, he also suffered prejudice in the most visceral sense. But for his counsel's deficient performance, it is reasonably likely that Mr. Monea would have received a shorter prison sentence. In addition to the ineffective assistance issue, there is at the very least a factual question that warranted a 2255B as to whether the prosecution introduced false testimony at Mr. Monea's trial. Given that that testimony was provided by the government's star witness, 28 U.S.C. section 2255B required that the habeas court hold a prompt hearing. Judge Adams' failure to do so, and in fact, his failure to respond at all to Mr. Monea's 2255 motion for nearly five years, was contrary to the statute enacted, and thus abuse of discretion. This court should therefore reverse, or at the very least remand, for an evidentiary hearing under section 2255B. If I could, I'd like to begin with the ineffective assistance issue. Just one question here about your request for a new evidentiary hearing. Now the district judge did, in his ruling, I guess he indicated why he didn't think a new hearing was necessary or appropriate, and he addressed the issues raised in the request for the 2255 order, which again came nearly five years after Mr. Monea filed his habeas motion. Judge Adams actually doesn't go through that analysis. So with respect to the prosecutorial misconduct claim, which was claim six of Mr. Monea's habeas motion. Are you referring to the prior evidentiary hearing? No, I'm referring to the habeas petition, which is what's on appeal here. So what Judge Adams says in his 2255 order, in the penultimate paragraph, is well there isn't enough evidence to meet the claim. But that, of course, is not the standard under 2255B. What the statute of Congress wrote says that except in the narrow class of cases in which the motion and the files conclusively show that the petitioner is entitled to no relief, the habeas court shall grant a prompt hearing. And what this court has said in cases like Huff and Valentine, that there's a very low standard that a petitioner must meet in order to get a hearing. There must be a factual narrative as opposed to just legal conclusions. So instead of just saying I suffered ineffective assistance of counsel or I suffered prosecutorial misconduct, you must provide a factual narrative that's clearly satisfied here. That factual narrative must not be inherently incredible. And that's clearly satisfied here. And I'm happy to talk about that if this court has any questions about that. And third, it must not be conclusively disproved by the record. And again, that's not what is true here. But Judge Adams did not go through that analysis. He, in fact, sort of flipped the burden on that issue. Isn't part of the argument against your position is that these issues were addressed or available to be addressed on direct appeal and the sufficiency of the tapes and the other issues pertaining there to were the issue in connection with the direct appeal such that I suppose Judge Adams was taking the view that there were no additional evidentiary development that would have changed what transpired in connection with the direct appeal here. So yes, the government makes that argument. And to be clear, with respect to the second issue on that couldn't possibly have been waived because the issue was solely a collateral attack. It had to do with statements outside the court during the forfeiture proceedings. So that analysis is entirely irrelevant to whether or not a hearing was required on that issue. But it's also legally wrong as to whether a hearing was required on the ineffective assistance issue. Just as a formal legal matter, a habeas petitioner cannot waive an ineffective assistance claim on direct appeal under the federal system. That sort of claim can't be raised. And looking at the facts here, I mean, it's very clear that a hearing would have made a difference because Judge Adams routinely refers to what in his view was a two-second alteration. But of course, if he had looked at Mr. Stuchman's affidavit, which was submitted after the October 15 all-day hearing, because again, and I'm happy to go through the chronology of this, but trial counsel failed to come forward with competent experts in order to give testimony on what was a very serious issue that clearly under Rule 701 and 702 would have required expert testimony to opine. Because trial counsel did not come forward with competent experts in a timely manner, Judge Adams was left with the misimpression that all we were talking about was a two-second issue. But of course, as the expert stated in his testimony, which he never referred to in either his post-trial decision or his 2255 decision, it's not a two-second alteration. The remnants of the alleged alteration lasts for two seconds. But if Mr. Monnet's allegation is correct, then that is an alteration of unknown duration. Now, that may seem like a trivial factual distinction, but it's clearly something that irked Judge Adams, that he thought this was a nothing issue. And had effective trial counsel put forward a meaningful presentation of this issue, had he investigated it prior to trial, had he brought the... Are you going to be able to overcome the question of whether these things could have been altered, the tapes? So, I mean, I don't, there was all this testimony about how there's no way you could even play it back if it was So, I have three responses to that, Your Honor. The first is, I mean, Mr. Reams in his affidavit, and again, Mr. Reams was never put on the stand, but Mr. Reams in his affidavit did say that, you know, in his experiences could be altered. And the government's witness said, you know, a sufficiently motivated person could do it. So there is at least the possibility that it could be proven. But even if this court and the government, you know, it couldn't have been altered, there's still the issue of sentencing prejudice. I mean, you know, the standard that Strickland v. Washington interacts is always a difficult one for a petitioner to overcome because it's by nature a counterfactual. But here we have pretty darn good evidence of what Judge Adams would have done had competent counsel presented this issue in a more... What you argued below was just the tapes and the threats and whatever, right? You didn't make the sentencing, you didn't connect the sentence with the IAC argument below, right? And we denied a Certificate of Appealability on the sentencing error, didn't we, ground four? I believe that's half right, Your Honor. I mean, so you're correct, the court did deny a COA on the sentencing issue. But I do believe that Mr. Monet in his Pro Se 2255 petition did argue that he would have received, it's reasonably likely that he would have received a lower sentence but for the way that this issue was presented. So I don't think that that's waived in any sense. And it's also clearly encapsulated in what the court granted in its first issue on the COA. I mean, that, you know, it is black letter law that if it is reasonably likely that but for counsel's deficient performance, the defendant would have received a lower sentence, that that can be... But you're saying I didn't see that explicitly made below. I mean, I don't, I'll take another look. And it's jurisdictional, right? We couldn't do it then if that were true. So I don't think that if he didn't say it in so many words that it would be jurisdictional because that's part of the standard. I mean, so if the deficient performance, and I'm happy to walk through the facts of that, but this court thinks that there was deficient performance. And I think it's, you know, clear as day that at least after trial, the failure to follow Judge Adams' August 2nd order as to which expert to hire and then... Let me ask you another question of the prejudice. So didn't Judge Adams say ultimately that he wouldn't have given a lower sentence in this order, in the habeas context? So he said that. So why isn't that, why doesn't that just settle it? I mean, it's the same judge. Yes, years before he had said, man, I would grant a downward variance if I had known, if it had been presented. And he did grant a downward variance. He did. And so then a few years later, you have the habeas and he looks at it and he says, I wouldn't have done it. And I mean, we send the case back to him, what is he going to do? I mean, it's the same judge, right? And unless you've asked us to assign another judge, but what are we, what relief would we say? It's like, well, if you think there was deficient performance, you should rethink what the prejudice is and rethink your statement that you wouldn't have granted a variance? So my time is up. May I answer? Yes, go ahead. So, I mean, I think just as a form matter of what the order would say, if you found both deficient performance and prejudice, you wouldn't remand on that issue. I mean, just that would just be a reversal. There would have been ineffective assistance of counsel that was proven. And in terms of what we would be saying to Judge Adams, I mean, But it's OK, fine, we would remand, but we would remand for resentencing, right? I mean, you're saying if you have raised the sentencing issue and that's the prejudice and it was prejudice at sentencing because of the IAC, we give it back for resentencing, right? We give it back to Judge Adams for resentencing, except Judge Adams has already said it wouldn't have affected my decision. So what's the point? Two things, and I'll sit down because I know I'm over my time at this point. I mean, the first is if the rule were that whenever the habeas court who tried the issue before says, why wouldn't it change my mind? If that were the rule, then there's never going to be prejudice. I mean, that cannot be the standard because it's counterfactual. So you obviously cannot prove a counterfactual that's inherent in the nature of the test that Strickland v. Washington imposes. So if it were just sort of per se defeated any time, the judge who was the same judge before said, no, I wouldn't have changed my mind, then that wouldn't be a standard at all. And I mean, just quickly as a factual matter, we're in month 149 of Mr. Monday's 150-month sentence. So I do think that resentencing, if that were the remedy, would look very different than if we were in month one. And I'll reserve the rest of my time for it. Thank you very much. Good morning. May it please the court, Matthew Call for the government. Mr. Monet is attempting to use evidence that his trial attorneys gathered, submitted to the district court, used to convince the court to get an evidentiary hearing, and then additional evidence that those same attorneys obtained and submitted after the evidentiary hearing. He's trying to use all of this evidence that his own attorneys gathered as evidence that they were ineffective. So there's a sort of irony to his claim here today. This court held on direct appeal. But they didn't do what even the judge suggested they do, right? He said, why don't you go get this expert? I've got a guy. And they come back with these guys. And the judge says, what are you doing? Well, and your honor, the problem with following the course that the district court suggested is that when a defendant submits to an independent expert, they have no control over the result. They're sort of stuck with what happens. It was a strategic decision. And in a 2255, those types of strategic decisions are left to defense counsel. And they strategically decided, let's find experts that are going to agree with our opinion and submit those to the court. They had no control over this proposed expert that the court suggested to them. And for them to show that it was ineffective. So they were finally exercising judgment about this issue after not even paying attention to it, after this other guy said, hey, I think there's something here. We ought to do an investigation. He feels so adamant about it. He tells, I'm going to tell the court myself. Is that reasonable performance by this attorney? We think that he did exercise reasonable performance. This was an outlandish claim. There was nothing other than the defendant's own word to support it. They still listened to what their investigator had to say about it. And when the investigator came up with something other than the defendant's own claim, they submitted it to the court. And they pursued it aggressively in their new trial motion, getting an evidentiary hearing. And even after it was clear at that hearing that the court was not convinced by what they submitted, they went out and got additional evidence from additional experts. And this court on direct appeal said that the district court thoroughly considered those new experts and yet was insufficient to merit a new evidentiary hearing. So to say now with no new evidence that it was somehow ineffective the way they handled it is a stretch. And even if it were, even if you could show they should have, let's assume for sake of argument, that they should have presented this claim sooner, they can't show a different result. They can't show that the trial would have gone differently or as you pointed out, Judge Nalbandian, that the sentence would have gone differently. They were hamstrung, right? I don't know what to do with this, but they didn't have access to this device, right? They're experts. Did they examine this thing? Could the defense have tested this argument that it couldn't be altered? They requested permission to do so. The district court denied it and they didn't raise that on appeal. And all of the evidence, their experts were given a, the way the device works is that it's recorded to a chip. From there it is downloaded to a computer. They were given a copy immediately off of that computer and there was testimony from the evidence technician at the FBI that it had not been altered since it was downloaded in, I think it was November 6th of 2006. So they had access to first generation authentic copies of that digital recording. They didn't have access to the underlying device, but they didn't appeal that issue. And they haven't shown that that was any kind of error and that really wasn't raised in the 2255 petition as being ineffective. The attorneys tried to get it, but they were unsuccessful. Lack of success doesn't mean ineffectiveness. Sometimes they're legitimately supposed to lose. And even if they were ineffective, a point which we certainly don't concede, they have to show some kind of prejudice. At sentencing, yes, Judge Adams expressed annoyance at how defense counsel handled the issue timing wise. Frankly, any district court judge that's surprised just before the jury comes out for closing argument with a new, somewhat outlandish issue, any district court judge is going to react poorly to that. But ultimately, he considered their new trial motion, he granted them a day-long evidentiary hearing, and he thoroughly considered the post-hearing evidence that they submitted. So they haven't shown what would have changed had it been handled differently. He specifically said, if this had been presented differently, I'd consider a variance. And he gave a variance. Yeah, but he didn't, we don't know that that was, I mean, the implication of what he did was, I would have given you a greater variance, isn't it? I mean, if I had known, yes, I'm giving you the sentence I'm giving you, but if I had known about this other stuff, if you had been timely about it, if you had been competent about it, I would have given you more time. I have two responses to that, your honor. Number one, this court, in its order partially granting the certificate of appealability, stated that no reasonable jurists could not debate that the district court's conclusion failed to show that Whitaker performed deficiently during sentencing and that he was prejudiced by any alleged error. So this court's order has already said no reasonable jurists could debate prejudice at sentencing. Jurisdictionally, that issue is not before the court. You're saying, this is the issue I raised with counsel about the COA. So you're saying the COA, it wasn't broad enough to cover sentencing prejudice as part of the IAC? This court's order said that no reasonable jurists could debate that there was prejudice at sentencing. And even if this court were to consider the merits of this argument, the sentencing transcript itself, the judge clearly says that he will set that issue aside at sentencing and then goes on, not just to give a variance, but a substantial variance. The court did express its annoyance. There's no doubt about it. But at page 2069, page ID 2070, the court mentioned that it had great pause. And in their brief, they refer to departures. That's not what the district court says. The district court specifically says that it gave him pause as to whether he would grant a variance. Those things caused me great pause as to whether or not this defendant deserves any consideration as to a variance. Then the court comes back and says it would set it aside. It says that two different times, page ID 2079, page ID 2080. And the court gave a substantial downward variance. The defendant was at a 235 to 290-month range, I believe was the range. He sentenced him to 150 months. It's an 85-month downward variance. So to come back here and say I was somehow prejudiced by that, when the court says I will set it aside and then varies downward by approximately seven years, there's just no evidence to support any kind of finding of prejudice on that. What do we do with his statement that it wouldn't have mattered? His post hoc statement now on habeas said it wouldn't have mattered. Is that conclusive? I don't think it's conclusive, but I think it's something this court could certainly consider, especially in light of its statements at the time of sentencing where it says I'm going to set it aside and I'm going to give a downward variance. And then he does give a downward variance. Not a few months, but a seven-year downward variance from approximately 20 years to approximately 13 years. So they simply haven't shown any kind of prejudice. Even if this issue is not already determined in the Certificate of Appealability, on the merits, they simply can't succeed on that. Let me ask you this question just to change gears. Why don't they deserve a hearing on the perjury issue? Don't we have a credibility conflict here? If there were no other evidence in the record and if the claim weren't inherently incredible, points which we do not concede, they'd still have to show materiality. And the government, the number of counts was entirely within the government's control. The jury knew that. The jury knew from Tanza's cross-examination, the undercover, page ID 2610-12, the redirect 2709-10, closing argument 2729-30, that the number of counts was directly related to what the government did. The jury's still convicted. This court still affirmed on direct appeal. Was there a question about each count received its own special verdict question or whatever? I believe it did, Your Honor. If you'll give me a moment, I can check the verdict for you. That's okay. Did it affect his sentence at all? It had no effect on his sentence. For purposes of sentencing, the $100,000 that was divided into this 50,000, 45,000, and $5,000 transactions, counts 2, 3, and 4, those were part of the $19.5 million money laundering conspiracy. That was the number that drove the guidelines. That was the number that drove the sentence. Do you think, though, that there's a conflict between what McCann said and what Tanza said? There is a conflict, but the district court is entitled to rely on the other parts of the record in this case. In deciding not to have a hearing? Yes. If the claim is contradicted by other evidence on the record or is inherently incredible, no evidentiary hearing is required under Arenado. The district court judge had the conversations. It had the tape recordings between Rizzo and Monet and Rizzo and Miller. What those recordings, and I quote several of them, and I believe I submitted them as a joint appendix to this court, what they show is that Monet asks for the deposit. Rizzo says, yeah, I'll try to get it to you. Then he says, hey, is it okay if we do it in a couple deposits? Monet has no problem with that. Rizzo then gets off the phone and gets on the phone with Miller and engages him in a discussion. During the discussions, he tells Miller, hey, by the way, I need some money from you because I've got something I've got to take care of. So the evidence in the record clearly showed that Rizzo did not have the funds available to make the transaction. Even if there's an issue of fact in that, her claim is inherently incredible. Her claim is the government lied and manipulated because it wanted to have three counts instead of one. If that were true, if this was not because the government didn't have funds but the government really did have funds, it would have been easy to do. Rizzo could have told Monet, my funds are coming from a couple different accounts. Monet didn't care. He just wanted to get a deposit so he had some indication that this transaction was going to go forward. So her claim is inherently incredible. It's contradicted by other evidence in the record. So no evidentiary hearing was required because the factual dispute didn't matter. It was immaterial to the outcome of this case. The jury knew during testimony, during closing argument, it was clear to them that the number of wire transfers was a matter solely under the government's control and they still convicted on all three counts and all three counts were affirmed on direct appeal. So this claim that there was somehow governmental misconduct is insufficient to get an evidentiary hearing and they haven't shown any kind of materiality which they must show in order to succeed on this claim. So for these reasons, Your Honor, we would... On the IAC, you would need to have a hearing on the Fong one of Strickland. So are you right? You're making the argument, he's making the argument. Don't we have a dispute on the level of performance here by the attorney? The performance of the attorney is spelled out clearly. I don't think any evidentiary hearing is necessary, number one, because they haven't shown any kind of prejudice. Set aside the prejudice for a second. I'm just wondering if your... Is your main argument, hey, there's no prejudice here so there's no need to have a hearing? I think on both grounds there's no need for a hearing. Just looking at the record as it appears, this court found that the district court thoroughly considered the affidavits the defense counsel submitted after the evidence tampering hearing. The district court thoroughly considered them and there was no need for a new evidentiary hearing. They've submitted no new evidence, no different evidence, no additional evidence whatsoever to show evidence tampering. They have the defendant's own allegation that he was threatened. They have his buddy's allegation that he was threatened. That doesn't show evidence tampering. That shows no changes to the tape. What they could have done was gone out and found an additional different expert and maybe that would have shown that the defense counsel should have obtained different experts. But really when it comes down to it here, defense counsel pursued this evidence tampering claim aggressively. Once they had the information from the investigator... There's a difference between doing something after trial, after the judge gives you a suggestion of a certain expert, and actually doing it before trial when you're putting together your trial strategy and you're putting together how you're going to present your case. The trial strategy was to argue advice of counsel and that there was no intent to conceal. Those were very reasonable strategies. They chose not to immediately pursue the strategy of, I was threatened and there were changes in the tapes. That's a strategic decision. For a defense lawyer to say that they were ineffective by pursuing one strategy over another is typically the kind of thing that's not examined in 2255. Moreover, they did, once they had the information from the investigator Roberts, they pursued that claim. They got an evidentiary hearing. They got multiple affidavits. The district court thoroughly considered them and rejected them. This court found that the district court was not required to give them any additional evidentiary hearing. He submitted no new evidence since then to show ineffectiveness, so no evidentiary hearing was required. Thank you. Thank you very much. Rebuttal? Just a few quick points in rebuttal. First, counsel said that it could have been a strategic decision to not hire Mr. Owen. I mean, that's possible that it could have been a strategic decision not to hire that particular expert, but it can't be strategic to hire someone who is woefully inadequate, someone who cannot be qualified to provide expert testimony on an issue that obviously, under Rule 702 and 701, must be provided by a qualified expert. So regardless of what this court thinks, if it's close to the line before trial. But it's not always sufficient if you hire an expert and he gets booted on dauber, is it? Like, for example. If you pick the wrong expert, people, attorneys pick the wrong expert all the time for a lot of different reasons. It doesn't mean you were objectively deficient under Strickland. So it doesn't always, but this is a pretty easy case for that, to be clear. The court did more than just direct the defense to a particular expert. It attached his curriculum vitae. It said specifically, this is the type of thing I want an expert to testify on. Digital audio forensics. That was the sole grounds for expertise, and Mr. Mariazzi and Cizic had no training or expertise in digital audio forensics. So I don't think that is close to the line with respect to deficient performance. Secondly, counsel said that the judge expressed annoyance at the sentencing hearing, but there's more than that. I mean, first of all, sentencing counsel, who is separate from trial counsel, specifically argued for not a day more, in her words, than 120 months. Now, it's true that Judge Adams granted a significant departure from 235 months to 150 months. But 150 months is still 30 months longer than 120 months. If it had been 120 months, Mr. Monet would not still be in custody. And, I mean, I think it's pretty hard to say that Judge Adams was just annoyed. I mean, if the court looks at page 2032 of the record, which is at the December 7, 2007, sentencing hearing, Judge Adams specifically denied a downward departure on acceptance of responsibility because of, quote, what I believe to be a contrived excuse. His problem was with the way that this issue was presented. He said throughout the sentencing hearing, as Judge Nalbandian said, had this issue been presented perhaps in a different manner, but because it wasn't, I find it extraordinarily difficult to look at this individual with any sympathy. Now, yes, it's true that Judge Adams went well below the bottom of the guideline. But, of course, the reasons that he gave for that would have been true even if competent counsel had competently presented the issue. He cited Mr. Monet's age. He was 60 at the time. He's 72 now. He cited Mr. Monet's family ties because his ex-wife and his daughter testified. And he cited the disparity between Mr. Monet's sentence and Mr. Miller's sentence. Mr. Miller, of course, pleaded guilty to 37 counts and yet only received a 57-month sentence. Each of those three things would have been true, still would have been true, had competent counsel put forward this very serious charge in a way that didn't spring it on the court at the very end of trial. I still get back to this. We send it back to him to have a hearing to determine what the prejudice was. You argue to him, you, Your Honor, would have done something different. And he looks at you and says, no, I wouldn't. What do we do with that? I think that the holding that we are asking for on the ineffective assistance issue is not a remand for a hearing. We are asking for a reversal, that as a matter of law, on the record, there's both deficient performance, and I think that's clear at least after trial. But then what are the further proceedings consistent with that ruling then below? So if, you know, putting aside the prosecutorial misconduct issue, and I want to get back to that for a second, where I do think there would have to be a hearing. So the remedy could either be, you know, could be a re-sentencing, which could be a reduction of his supervised release terms. You know, he'll be on supervised release for three years. There could be some sort of... But you're banking on us sending it to a different judge. No. I mean, I think particularly since Mr. Monet, by the time it's remanded, will be out of prison, I mean, I don't think that... We do think that a different judge, given, you know, the substantial time that Judge Adams sat on the Habeas Petition and didn't act until a Mendamis Petition was filed, we do think that the strong medicine of reassignment is appropriate here. But even if not, I mean, I don't think that it's unlikely to think that the same judge would say, all right, you received ineffective assistance of counsel. That's what the order from the Sixth Circuit says, and I think that your supervised release conditions should be different. So just very quickly on the prosecutorial misconduct issue. Materiality on the... Sure. So, I mean, what this court said in Rosencrantz is exactly appropriate here. The materiality question is not would it have changed if he had told the truth. The materiality question is would the outcome... Is there any reasonable likelihood that the outcome would have been different had the jury know that he lied? So I know I'm over my time, but just very quickly in Rosencrantz, the star witness, who was not a member of the investigative team, it was just an eyewitness, lied. The allegation was that she lied about whether or not she had met with the prosecution prior to trial. Anyone who's seen Law and Order knows that it's certainly likely that the star witness for the prosecution meets with the prosecution before they come to trial. And yet what this court said was even though the effect had she just told the truth would have been minimal in this court's own words, that's not the standard. From Nippu all the way up now, we know that credibility can often be determinative, particularly where it is the star witness. And here, Special Agent Tanza was the sun around which the government's case revolved. His fingerprints were all over the case. And if his credibility was damaged, it is at least reasonably likely that at least one of the three counts would have come out the other way or that Judge Adams would have either varied greater down to the 120 months that Ms. Hernandez asked for or granted at least one of the downward departures. Thank you very much. Thank you very much. Mr. Ruan, I see you were appointed under the Criminal Justice Act, and we know you do that as a service to the court and our system of justice, so we very much appreciate your service. Thank you very much. The case is submitted. The next case may be called.